318

659 A.2d 391

**MAZDA MOTOR OF AMERICA, INC., et al.**

v.

**Francis S. ROGOWSKI, III.**

**No. 1688, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

June 7, 1995.

Joseph G. Finnerty, Jr. (William L. Reynolds, Michael S. Barranco, and Piper & Marbury, on the brief), Baltimore, for appellants.

Alison D. Kohler (James M. Gabler Sandbower, Gabler & O'Shaughnessy, P.A., and Richard D. Rosenthal, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., CATHELL, J., and JOHN F. McAULIFFE, Judge (retired), Specially Assigned.

JOHN F. McAULIFFE, Judge.

Francis Rogowski was seriously injured when he fell asleep at the wheel of his 1987 Mazda pickup truck and collided head-on with a large tree while traveling at a speed of 30 to 40 miles per hour. He sued Mazda Motor of America, Inc. and Mazda Motor Company (hereinafter collectively "Mazda" or "the defendant"),[1] claiming that the seat belt restraint system in the Mazda was defective and unreasonably dangerous and that the defendant should have warned him that the seat belts would not protect him from injury when he was involved in an accident. A jury in the Circuit Court for Baltimore County found that there was no defect in the design or manufacture of the seat belt restraint system, but that the defendant was liable for failure to warn, and awarded damages of $601,644. The defendant appealed, and we now reverse, holding that there was no duty on the part of Mazda to warn that its seat belt restraint system, not otherwise defective, would not protect users from injury under all circumstances.

The plaintiff bought his 1987 Mazda B2000 pickup truck in July 1986 for $6,850. He signed a purchase order for the vehicle and gave a deposit on July 14 but did not take delivery until July 16, because he ordered the installation of an air conditioning system. The plaintiff testified that on July 14 he was given a packet of papers including an owner's manual for the vehicle, and that he read the manual before returning to pick up the vehicle. He testified that he intended to use the vehicle in his daily business of making deliveries, and that he was therefore interested in obtaining a pickup truck that was economical to purchase and to operate, and that was comfortable and safe. The plaintiff weighed about 350 pounds at the time and testified that he sat in the Mazda and attached the seat belts before the making the purchase, to be certain there would be a comfortable fit. He said that before he took delivery on the vehicle he read the owner's manual and relied

---

1. The plaintiff also sued Larry's Dodge, Inc., the dealer from whom he purchased the Mazda, but agreed at the commencement of the trial to proceed only against the Mazda Corporations.

on the representation that the seat belt "would secure me and hold me in place." He further testified that if he had known that the seat belt would not restrain him from contact with interior parts of the vehicle in the event of a collision, he would have bought another vehicle.

On November 18, 1986, the day prior to the accident, the plaintiff began his deliveries at 4:30 p.m. At about 6:00 a.m. the following day, while traveling east on Accokeek Road in Prince George's County, the plaintiff "nodded off." The road turned to the left, but the plaintiff's vehicle continued straight ahead striking a large tree not far from the roadway. The posted speed limit at that point was 40 miles per hour. The plaintiff testified he had been proceeding at approximately 30 miles per hour while on Accokeek Road. An expert witness called by the plaintiff estimated the speed of the vehicle at the time of impact to have been between 30 and 35 miles per hour. An expert witness for the defense placed the speed at 40 miles per hour.

The plaintiff suffered severe injuries to his legs, right arm, and facial area. Testimony indicated that his left leg had come into contact with either the lower portion of the dashboard or with the clutch pedal, and that his head had made contact with the steering wheel, and possibly with the windshield. The lap and shoulder belts that comprised the seat belt restraint system were in place and intact after the accident, although the plaintiff described them as "hanging loose" on him after the accident.

Plaintiff filed this action in 1989, claiming compensatory and punitive damages on theories of strict liability in tort for defective design and failure to warn, breach of express and implied warranties, negligence, and deceit. Before the case was given to the jury, the plaintiff dismissed the counts sounding in negligence and in deceit, and the trial judge ruled that plaintiff's evidence was insufficient to support a claim for punitive damages. Plaintiff's express warranty claim was based upon the following statement that appeared in the owner's manual for this vehicle:

## FRONT SEAT BELTS

To help decrease the possibly or severity of injury in accidents or sudden stops, we recommend that you and your passengers in the vehicle be properly restrained at all times, using the seat belts provided. The front seat lap-shoulder belts have retractors with inertia locks.

The retractors keep the belts out of the way while passengers enter or exit the vehicle. Inertia locks allow the belts to remain slack on the passengers for comfort until a deceleration force occurs (such as a sudden stop or collision). At that time the belts will automatically lock in position, and the passengers will not be thrown forward. Before fastening the seat belts, the driver should always adjust the seat to the most comfortable driving position.

The plaintiff contended that the effect of this language was to guarantee that he would not come into contact with any part of the interior of the vehicle as a result of a collision of any kind. The jury found in favor of the defendant on this claim.

The trial judge determined that under the circumstances of this case the breach of implied warranty claim was identical to the strict liability claim for defective design. Accordingly, the jury was instructed with regard to the duty of the defendant to refrain from selling a vehicle in a defective condition unreasonably dangerous to the user or consumer. *See* Restatement (Second) of Torts, § 402A (1965); *Phipps v. General Motors Corp.,* 278 Md. 337, 363 A.2d 955 (1976). The plaintiff offered two theories of alleged negligent design. First, he contended that the "stalk" or stiff support for the female buckle of the restraint system located on the right side of the driver extended too far vertically when the seat was placed in the full aft position. This condition, a plaintiff's expert opined, caused the lap belt to be positioned too high on the driver, permitting "submarining" of the driver beneath the belt in the event of a collision, and thereby permitting contact of the driver's lower extremities with the clutch and brake pedals. This theory was somewhat contradicted by the plaintiff's testimony that at the time of the accident he was wearing the seat belt with the lap belt securely fastened across the

lower part of his pelvis, and by the testimony of an attending orthopedic surgeon who reported finding "seat belt marks across [the plaintiff's] pelvis along his iliac crest." In any event, the jury found against the plaintiff on this theory.

The plaintiff's second theory of negligent design was that the seat belt restraint system was defective and unreasonably dangerous because it was not designed to prevent injury-producing impact of the driver with interior parts of the vehicle during a front-end collision. The plaintiff produced the testimony of expert witnesses who supported this theory, and the defendant produced expert testimony to the contrary. The defendant's experts pointed out that a collision of a vehicle with an immovable object imparted considerably more force to an occupant of the vehicle than would a collision with an object that would yield and therefore absorb some of the force and slow the deceleration. Defendant's experts testified that a collision with an immovable object imparted the same force to an occupant as would be experienced in a head-on collision with another vehicle of the same size and weight traveling at the same speed, *i.e.*, that the force exerted on the occupant of a vehicle striking a large tree at 40 miles per hour would be the same as that generated by two vehicles of the same size and weight colliding head-on while each was traveling at 40 miles per hour—a closing speed of 80 miles per hour. This force, it was estimated, was the equivalent of the force that would be generated by dropping this vehicle nose first from a height of five stories.

The defendant's experts demonstrated that in crash tests conducted to determine whether the 1987 Mazda B2000 pickup truck complied with Federal Motor Vehicle Safety Standards (FMVSS), the vehicle was found to perform in accordance with these standards. FMVSS 208 pertains to seat belt assembly requirements and requires, among other things, that crash tests be conducted at 30 miles per hour into an immovable barrier. In these tests, dummies are restrained within the vehicle by the seat belt assemblies and measurements are taken of the forces applied to the head, torso, and lower extremities of the dummies as those parts come into contact

with the interior of the vehicle at the time of the test crash. In order to meet the federal standards, these measured forces must not exceed established limits. The reports and video tapes showed that in a frontal crash into a barrier at 30 miles per hour the impact of the driver into the steering wheel and dashboard did not exceed the forces established by the standards. The jury found in favor of the defendant on this second theory of negligent design.

The final claim made by the plaintiff, and the one upon which the jury found in his favor, was a claim of strict liability in tort for failure to warn. Determining exactly what warning the plaintiff believes should have been given is somewhat difficult. In his complaint, and in some testimony offered at trial, the contention seems to be that Mazda had a duty to warn that the seat belt system would not restrain occupants from colliding with interior fittings of the vehicle during a front-end collision. In Count I of the complaint, which sounds in strict liability, the plaintiff complained that:

> No warnings or advice accompanied the Mazda truck before and/or at the time of sale to Plaintiff advising Plaintiff of the risks to the driver of striking the interior fittings of said truck and the risks of serious injury or death to the driver during a front-end collision, of the failure of the lap and shoulder belts to restrain drivers, including Plaintiff, during a front-end collision from striking such interior fittings, of available alternative restraint systems, and/or of the overall lack of vehicle crashworthiness....

In his brief, the plaintiff seems to narrow his focus and suggests that Mazda had a duty to warn him "that in a front-end collision of 30 to 40 miles per hour, he could expect to be severely injured by coming into contact with the interior fittings of the Mazda B2000 truck."

Mazda contends that it has a duty to warn only when the product is unreasonably dangerous because of a defect in design or manufacture. It argues that the jury's finding of no defect in design or manufacture therefore defeats any possible claim based on a failure to warn. We do not agree. An

obligation to warn may arise when there is no defect in design or manufacture, but the distributor knows or should have known of product-related risks that would not be obvious to normal, reasonable users.

A manufacturer has a duty to warn with respect to latent dangerous characteristics of the product, even though there is no 'defect' in the product itself. The failure to give such a warning when it is required is itself a defect in the product and will, without more, cause the product to be unreasonably dangerous as marketed. In such a case, a product, although faultlessly manufactured and designed, may be defective when placed in the consumers' hands without an adequate warning concerning the manner in which to use the product safely.

3 American Law of Products Liability 3d, § 32:2 (1993).

■ Mazda also contends that there is no difference between a claim of negligence and a claim of strict liability in tort based on failure to warn, and that when the plaintiff withdrew his claim of negligence he necessarily also withdrew his claim of failure to warn. Again, we do not agree. Certainly, it is true that a strict liability claim based on failure to warn bears a strong resemblance to a claim of negligence. Concepts of duty, breach, causation, and damages are present in both. Indeed, one judge has commented that distinguishing between negligence and strict liability in failure to warn cases should be left to those who count angels on the head of a pin. *Nigh v. Dow Chemical Co.*, 634 F.Supp. 1513, 1517 (W.D.Wis. 1986).

Professors Henderson and Twerski state that "it is no easy matter in design and warning cases to discover a difference between strict liability and negligence." J. Henderson and A. Twerski, *Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn*, 65 N.Y.U.L.Rev. 265, 272 (1960).

In *Volkswagen of America v. Young*, 272 Md. 201, 321 A.2d 737 (1974), the driver of an automobile was killed when the seat in which he was sitting separated from the floor, propelling him into the rear portion of the vehicle. The plaintiff

alleged defective design in the seat mechanism and in the passenger compartment configuration. The Court of Appeals declined to adopt strict liability as a theory of liability in that case, stating that under the particular facts strict liability would have "no special meaning." Similarly, in *Frericks v. General Motors Corp.*, 274 Md. 288, 299, 336 A.2d 118 (1975), the Court of Appeals declined to apply a strict liability theory where liability was predicated upon the existence of an alleged defect in the design of an automobile which caused second impact injuries.

In *Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976), which involved a claim of strict liability because of an alleged defect that caused an. automobile to accelerate suddenly at a high rate of speed, the Court distinguished *Volkswagen* and *Frericks*, holding that "[t]he alleged defect in the instant case, . . . whether resulting from a defective design or not, is clearly of a different character from the asserted design defects in *Volkswagen* and *Frericks*." *Id.* at 348, 363 A.2d 955. More recently, in *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992), the Court noted distinctions between negligence and strict liability failure to warn claims:

> We note that despite the overlap of negligence principles in a strict liability failure to warn case, strict liability differs from a negligence cause of action in that contributory negligence is not a defense to a strict liability claim. *Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 597–598, 495 A.2d 348, 356–357 (1985). In addition, in light of the other comments to § 402A of the Restatement (Second) of Torts, which apply in defective design, defective construction, and failure to warn cases, there are some differences between a negligent failure to warn case and a failure to warn based upon § 402A and Comment j.

*Id.* at 435, n. 7, 601 A.2d 633.

We turn to Mazda's final contention—that the evidence was insufficient to support a finding of strict liability for failure to warn. Mazda advances this argument on three principal bases: 1) that Mazda did not owe a duty to warn because the

risk about which the plaintiff complains was open and obvious; 2) that the plaintiff did not establish an adequate causal link between any failure to warn and the plaintiff's injuries; and 3) that the plaintiff was obliged to, but did not, present any evidence of a feasible warning that effectively could have been given. We agree with the first prong of Mazda's argument, and we discuss the other contentions only as they interact with the concept of duty to warn.

■■■ The general rule in strict liability failure to warn cases is that

> there is no duty resting upon a manufacturer or supplier to warn of a product-connected danger that is obvious, whether or not actually known to the user. The same principle applies where the danger is one that might be said to be generally known, or a matter of common knowledge.

1 American Law Product Liability 3d § 1:70 (1987) (footnote omitted). In the same text, this principle is stated with greater specificity at § 32:61 (footnotes omitted):

> Whether there is a duty to warn and the adequacy of warnings given must be evaluated in connection with the knowledge and expertise of those who may reasonably be expected to use or otherwise come into contact with the product as it proceeds along its intended marketing chain. If the average consumer might not reasonably anticipate and fully appreciate the dangerous condition of a product or the attendant risk of injury, the manufacturer must warn of the danger. Conversely, a manufacturer or supplier has no duty to warn if the hazard is one of which the plaintiff or other user has equal knowledge, or if the plaintiff or other user would ordinarily discover the condition of the product and realize the danger involved. The duty to warn extends only to those who can reasonably be assumed to be ignorant of the danger. Accordingly, there is no duty to warn on the part of a manufacturer or supplier of a product if the plaintiff knows, should know, or reasonably may be expected to know of a particular danger inherent in a product, or the danger is or should be obvious.

Professors Henderson and Twerski state the rule in these terms:

> The general rule in American products law is that defendants owe no duty to warn of risks that are obvious to normal, reasonable users and consumers. Warnings are required with respect to hidden risks, but obvious risks are better left to consumers themselves, or to product designers, to identify and minimize.... Most courts agree that for purposes of determining whether the defendant owed a duty to warn of a particular risk, the standard for testing obviousness is objective. Thus, the issue for purposes of determining whether a breach of duty occurred is not whether the plaintiff actually recognized the risk, but whether a reasonable person in the plaintiff's position would have done so.

J. Henderson and A. Twerski, *supra*, 65 N.Y.U.L.Rev. at 280, 283 (footnotes omitted).

In *Phipps, supra*, the Court of Appeals spoke of the objective knowledge of the consumer in the context of dangerousness of the product:

> As Comment g explains, the requirement of a defective condition limits application of § 402A to those situations where 'the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.' An 'unreasonably dangerous' product is defined in Comment i as one which is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'

278 Md. at 344, 363 A.2d 955.

The eminently reasonable principle that there is no duty to warn of a risk which should be obvious to the user has long been recognized in failure to warn cases brought as traditional negligence claims. In *Volkswagen of America v. Young, supra*, the Court of Appeals stated:

In sum, 'traditional rules of negligence' lead to the conclusion that an automobile manufacturer is liable for a defect in design which the manufacturer could have reasonably foreseen would cause or enhance injuries on impact, which is not patent or obvious to the user, and which in fact leads to or enhances the injuries in an automobile collision.

272 Md. at 216, 321 A.2d 737.

[T]here can be no recovery if the danger inherent in the particular design was obvious or patent to the user of the vehicle.

*Id.* at 219, 321 A.2d 737.

This Court discussed the concept of "open and obvious danger" in the context of failure to warn claims in *Nicholson v. Yamaha*, 80 Md.App. 695, 566 A.2d 135 (1989), *cert. denied*, 318 Md. 683, 569 A.2d 1242 (1990). The plaintiff in that case presented failure to warn claims under negligence and strict liability theories, contending that the manufacturer of a motorcycle had a duty to warn him of the dangers of lower leg injuries from the operation of a motorcycle, and of the availability of sufficient design modification to prevent or substantially lessen those injuries. First addressing the negligence claim, this Court said:

We are here dealing with what has become known as the 'latent/patent rule,' that there is no liability on the part of a manufacturer for negligence, either in design or in failure to warn, where the defect in question is open and obvious to the consumer....

The latent/patent rule has an *objective*, not a *subjective*, basis. The question is not whether the particular plaintiff actually foresaw the potential danger but whether the danger was sufficiently evident that a reasonable buyer in the plaintiff's position would have foreseen it. One cannot impose liability where it would not otherwise exist simply by denying knowledge of that which to any reasonable person would be obvious.

Often ... the patency of the danger is a jury issue because reasonable minds could differ on it. That is not the

case here, however. One need do no more than look at a motorcycle unequipped with special devices to know that it provides no protection to lower limbs straddling the vehicle in the event of a collision from either side. Appellant's self-serving and virtually unrefutable assertion that *he* was unaware of the danger does not suffice to make the question a jury issue. As the 'latent/patent rule' has been applied in Maryland to date, it follows from this that the manufacturer had no general duty either to warn of the danger or to equip the motorcycle with a protective device.

*Id.,* 80 Md.App. at 715, 566 A.2d 135 (emphasis in original; citations omitted). Turning to the strict liability claim, the Court said:

We have already concluded that the amended complaint fails adequately to allege that the motorcycle in question was unreasonably dangerous, and that suffices to sustain the judgment with respect to [the strict liability failure to warn count]. Apart from that, however, the duty of a manufacturer to warn applies only to inherent and hidden dangers—latent dangers not readily apparent to the consumer. *See Moran v. Faberge,* 273 Md. 538, 552, 332 A.2d 11 (1975); see also *Restatement (Second) of Torts* § 402A, comment j: 'But a seller is not required to warn with respect to products ... when the danger, or potentiality of danger, is generally known and recognized.' Here, as we have said, the danger not warned about was clear and obvious.

*Id.* at 720–21, 566 A.2d 135.

■ We reach the same conclusion in this case—the danger not warned about was clear and obvious. It borders on the absurd to suggest that persons of ordinary intelligence would not appreciate the fact that seat belts, no matter how well designed and made, can not be expected to protect the occupants of a vehicle from all injury, or even from serious injury, no matter how substantial the impact of a collision. Quite apart from the difficult questions of just what a manufacturer or seller should incorporate in a notice plaintiff believes should

be given, or how that notice should be given,[2] there simply is no necessity to explain that which is obvious—that seat belts do not and cannot protect the occupants of the vehicle from injury no matter how severe the accident. Moreover, the giving of unnecessary warnings should be avoided because the presence of superfluous warnings seriously detracts from the efficacy of warnings that are needed.

> The most significant social cost generated by requiring distributors to warn against remote risks is the reduced effectiveness of potentially helpful warnings directed towards risks which are not remote. Bombarded with nearly useless warnings about risks that rarely materialize in harm, many consumers could be expected to give up on warnings altogether. And the few persons who might continue to take warnings seriously in an environment crowded with warnings of remote risks would probably overreact, investing too heavily in their versions of 'safety.' Given these limits on the capacity of consumers to react effectively to excessive risk information, the optimal, rather than the highest, levels of risk information, measured both qualitatively and quantitatively, are what is called for.

J. Henderson and A. Twerski, *supra*, 65 N.Y.U.L.Rev. at 296 (footnotes omitted).

We conclude that the evidence in this case was insufficient to give rise to a tort duty to warn, and that the defendant's

---

**2.** If, as plaintiff seems at times to suggest, the warning should be given in the owner's manual, there arises the question of how that notice could be effective. Plaintiff argues that in his case he would have refused to purchase the vehicle, but in the ordinary case, and in perhaps even in this plaintiff's case, the sale is completed before the purchaser has an opportunity to read the owner's manual. Warnings given to consumers are effective when the consumer is informed of a way in which the product can be used that nullifies or mitigates the risk. Here, however, the risk of injury is from an accident, and that risk is inherent in the operation of a motor vehicle. Moreover, if the notice is required in this case, where there is no defect in design or manufacture of the seatbelt restraint system, it presumably would be required in the case of every manufacturer, and thus every owner's manual would say the same thing.

motion for judgment at the conclusion of all the evidence should have been granted as to that claim.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER JUDGMENT IN FAVOR OF THE DEFENDANTS; COSTS TO BE PAID BY THE APPELLEE.