**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM L. HIGGINS; BRENDA L.
HIGGINS,
<u>Plaintiffs-Appellants,</u>

and

BRIEANNE M. HIGGINS,                                        No. 97-1803
<u>Plaintiff,</u>

v.

DIVERSEY CORPORATION,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-95-138-L)

Argued: January 27, 1998

Decided: February 24, 1998

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge, and
GOODWIN, United States District Judge for the
Southern District of West Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Sidney Gordon Leech, GOODELL, DEVRIES, LEECH
& GRAY, L.L.P., Baltimore, Maryland, for Appellants. Donna Pres-

ton Sturtz, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee. **ON BRIEF:** Andrew Gendron, GOODELL, DEVRIES, LEECH & GRAY, L.L.P., Baltimore, Maryland; Stephen W. Lutche, HERTSCH, GESSNER & SNEE, P.A., Bel Air, Maryland, for Appellants. Timothy L. Mullin, Jr., Virginia S. Hovermill, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Higgins family sued the Diversey Corporation for injuries allegedly caused when William L. Higgins inhaled particles from one of Diversey's bleach products. Before trial, Diversey sought to exclude certain expert testimony and moved for summary judgment. The district court excluded the testimony and granted summary judgment to Diversey. We now affirm.

I.

In February 1992, William Higgins worked as a laundry manager for the Le Fontaine Bleu company in one of its catering facilities. His duties included delivering items to other catering facilities; inspecting and maintaining laundry equipment; and supervising several employees. The catering facility where Higgins worked used large quantities of cleaning products such as soap powder, bleach, and starch. Employees, including Higgins, would empty the cleaning products from their original containers into large cardboard drums, between 2 1/2 and 3 feet tall.

Diversey supplied Le Fontaine Bleu with several laundry products, including a powdered bleach known as "DriChlorine PX 43" ("PX 43"). PX 43 does not contain chlorine; instead, it contains a

2

chlorine releasing agent called dichlorodimethylhydantoin ("hydantoin"). When dissolved, hydantoin releases different chlorine compounds depending on the pH of the solvent. A label on the PX 43 box warns users to "Wear eye protection such as goggles or side shield safety glasses, clothing or rubber gloves to prevent prolonged skin contact when using product. Wash after handling product or preparing dilutions. Avoid breathing dust, mist or product spray." When pouring bleach into the drums, Higgins did not wear gloves, goggles, safety eyeglasses, or a mask.

On Wednesday, February 26, 1992, Higgins attempted to empty two 50-pound boxes of PX 43 into one of the drums. Higgins rested the first box on the edge of the barrel and allowed its contents to empty slowly into the barrel. He emptied it without difficulty. As he was emptying the second box, it slipped forward on the edge of the barrel, causing the contents to pour into the barrel all at once and creating a cloud of dust above the barrel. As Higgins backed away from the barrel, he began to cough and felt a burning sensation in his throat but experienced no other discomfort. The coughing soon subsided, and Higgins returned to work for the remainder of the day. He worked the following two days and did not experience any problems.

Beginning on Friday, February 28 and over that weekend, Higgins caulked the tile in a bathroom at his home. He used a large quantity of mineral spirits to treat the tile and did not wear protective gear such as gloves or a respirator. Higgins began to develop a mild cough on Friday in the late afternoon or early evening. On Saturday and Sunday, he coughed up green phlegm. On Monday morning, Higgins woke up and planned to go to work but began to cough up a thick brown phlegm. He sought medical care on Monday and was diagnosed with pneumonia. Higgins' symptoms worsened during the week, and he was hospitalized on March 9. Higgins was diagnosed with an acute respiratory distress syndrome of unclear origin. He was discharged from the hospital on March 30 and has used oxygen support since 1992.

Higgins and his wife ("appellants") as well as their minor child filed the instant complaint against Diversey in the Circuit Court for Baltimore City. After Diversey removed the case, the district court dismissed several claims because they were not recognized under

3

Maryland law. Most of the remaining claims were predicated on the theory that Diversey failed to warn Higgins that PX 43 could cause permanent lung damage. Appellants planned to call several experts at trial. Three witnesses -- Dr. Calvin Fuhrmann, a board-certified internist and pulmonologist; Dr. Yale Caplan, a toxicologist; and Dr. Brian Schwartz, a board-certified specialist in internal and occupational medicine -- would testify that PX 43 caused Higgins' injuries; a fourth witness, Dr. Harry Snyder, a professor of Human Factors Engineering, would testify that the warnings on the packaging of PX 43 were inadequate. Diversey filed a motion seeking, inter alia, to exclude this testimony and requesting summary judgment. The district court granted the motion to exclude the testimony and granted summary judgment to Diversey on most of appellants' claims. Judgment became final after appellants voluntarily dismissed their remaining claims. On appeal, they challenge only the district court's exclusion of their experts' testimony and the grant of summary judgment on their failure to warn claims.

## II.

Appellants contest at length whether the district court erroneously excluded the expert testimony. We need not address this matter because appellants' claims are deficient in any event. On appeal, they argue that Diversey was not entitled to summary judgment on their failure to warn claims. To survive summary judgment, appellants had to create a triable issue over whether Diversey knew or should have known that PX 43 could cause Higgins' permanent lung damage. Because they have not done so, their claims must fail.

Maryland recognizes both strict liability and negligence theories for failure to warn claims. Eagle-Picher Indus., Inc. v. Balbos, 604 A.2d 445, 452-53 (Md. 1992) (negligent failure to warn); Owens-Illinois, Inc. v. Zenobia, 601 A.2d 633, 641 (Md. 1992) (strict liability failure to warn). While the terminology may differ, Maryland courts have acknowledged that both theories in failure to warn cases share certain common elements. See Mazda Motor of Am., Inc. v. Rogowski, 659 A.2d 391, 394 (Md. Ct. Spec. App. 1995); see also Higgins v. E.I. DuPont de Nemours & Co., Inc., 671 F. Supp. 1055, 1059-60 (D. Md. 1987). "Concepts of duty, breach, causation, and damages are present in both." Mazda Motor, 659 A.2d at 394.

4

Both theories require the plaintiff to show that a manufacturer knew or should have known of the presence of a danger. Eagle-Picher, 604 A.2d at 452; Zenobia, 601 A.2d at 641. To demonstrate that a manufacturer knew of the hazard, a plaintiff may offer proof that the manufacturer's employees had actual knowledge of it. For example, in Eagle-Picher, the Maryland Court of Appeals held that an asbestos manufacturer could be charged with knowledge of its health hazards where one of its sales representatives had read an article on the subject and referenced it in a report to three other company employees. 604 A.2d at 453. In deciding whether a manufacturer should have known of a hazard, the manufacturer is held to the knowledge of an expert in the field. Eagle-Picher, 604 A.2d at 452; Zenobia, 601 A.2d at 641. Thus, in Zenobia , the Maryland Court of Appeals held that "deposition evidence concerning what scientific and medical experts in the field knew about the dangers of asbestos is relevant to the plaintiff's attempt to prove state of the art." 601 A.2d at 645. In Eagle-Picher, evidence that over 200 articles had been published on the health hazards of asbestos by the time of a plaintiff's exposure demonstrated that an asbestos manufacturer should have known of the hazard. 604 A.2d at 452-53. While a plaintiff may rely on either method to demonstrate a manufacturer's liability for a failure to warn, "[t]he seller, however, need not give any warning if the requisite state of the art or knowledge does not require it." Zenobia, 601 A.2d at 642 n.8; see also Eagle-Picher, 604 A.2d at 453.

Appellants contend that Diversey knew that PX 43 could cause permanent lung damage. We disagree. Unlike the plaintiffs in Eagle-Picher, appellants have not adduced any direct proof that Diversey knew of this type of hazard. Instead, appellants attempt to infer Diversey's knowledge from two facts: (1) that the label on a PX 43 box warns users to avoid breathing dust, mist, or product spray and (2) that the Material Safety Data Sheet for PX 43 warns that "mists may irritate nose, throat, and pulmonary membranes." At most, however, these materials merely indicate that Diversey knew of, and in fact warned against, certain types of minor irritations. They do not show that Diversey actually knew of the entirely different type of injuries suffered by Higgins.

Nor have appellants created a triable issue over whether Diversey should have known that PX 43 might cause permanent lung damage.

5

Unlike the plaintiffs in <u>Zenobia</u>, they have not adduced any evidence concerning what other scientific, medical or industry experts knew about this sort of health risk. In fact, appellants' own experts suggest just the opposite; none of their experts had ever heard of an instance where exposure to a product such as PX 43 had caused permanent lung damage. Diversey cannot be held liable for failing to warn against a hazard of which it -- and indeed appellants' own experts -- were completely unaware. Because appellants have failed to create a triable issue over this element of their failure to warn claims -- essential to recovery under both strict liability and negligence theories -- these claims must fail.

III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

6