577 A.2d 373

**Francis HART**

v.

**ALLSTATE INSURANCE COMPANY.**

No. 1751, Sept. Term, 1989.

Court of Special Appeals of Maryland.

July 3, 1990.

Alan Hilliard Legum, Annapolis, for appellant.

Edward C. Mackie (Rollins, Smalkin, Richards & Mackie, on the brief), Baltimore, for appellee.

Argued before ALPERT, ROBERT M. BELL and CATHELL, JJ.

ROBERT M. BELL, Judge.

Francis Hart, appellant, appeals from the judgment of the Circuit Court for Anne Arundel County denying her prayer for declaratory relief. Her appeal presents a single issue: Whether, under the circumstances of this case, the trial court erred in applying the rule of *lex loci contractus*.[1] We will reverse.

The facts which control the resolution of this appeal are neither disputed, nor complicated. On November 30, 1985, appellant, a resident of New York and Florida, while a passenger in a car co-owned by herself, but driven by her husband, was injured in an automobile accident involving another vehicle. She filed a negligence action against both her husband and the driver of the other car. Allstate Insurance Company, appellee, issued the contract of insurance covering appellant's car and insuring appellant's husband. That contract of insurance was executed in Florida,

---

1. Appellant breaks the issue down into three questions, namely:

   1. Did the trial court err when it determined that Maryland's public policy was not strong enough to override the rule of lex loci contractus in relation to a household exclusion clause in an automobile insurance contract?

   2. Did the trial court err in applying Florida law to the instant case?

   3. Assuming that Florida law applies, did the trial court err in determining that a Florida insurance Claims Administration statute did not operate to preclude the Appellee from relying upon the coverage defense at issue in the instant case?

where appellant's car is also registered. It contains a household exclusion, that is, it excluded from coverage

Bodily injury to any person related to a person by blood, marriage or adoption and residing in that person insured's household.

Prior to the trial of the negligence action, appellee, relying on the household exclusion, informed appellant that it would not provide coverage for its insured. Consequently, appellant filed a second action in the Circuit Court for Anne Arundel County, this one seeking a declaration as to appellee's responsibility to pay any award of damages which the court might assess against its insured, her husband. In particular, she sought a declaration that the household exclusion in the policy is "invalid as contrary to the public policy expressed in Maryland's compulsory automobile insurance law" and, therefore, "is ineffective to insulate the insurer from liability for injuries to Francis Hart as alleged herein."

Following a hearing on the merits and after reviewing memoranda submitted by the parties, the court determined and, thus, declared that the rule of *lex loci contractus* would apply. In so concluding, it reasoned:

... [W]hen there is a strong Maryland public policy, Maryland Courts will not enforce out of State contracts in contravention of this policy and lex loci contractus will not apply. In this case, the Court finds that there is not such a strong public policy.

In *Jennings v. Government Employees Insurance*, 302 Md. 352, 488 A.2d 166 (1985), the Court of Appeals was presented with the issue of the validity of a household exclusion clause in an automobile liability insurance policy. 302 Md. at 353, 488 A.2d 166. The Court characterized as settled the proposition that, notwithstanding the absence of a statutory provision expressly forbidding such a clause in an automobile liability insurance policy, "a clause in an insurance policy, which is contrary to 'the public policy of this State, as set forth in ... the Insurance Code' or other

statute, is invalid and unenforceable." 302 Md. at 356, 488 A.2d 166, quoting *Guardian Life Insurance v. Insurance Commissioner*, 293 Md. 629, 643, 446 A.2d 1140 (1982). It then held that "the household exclusion clause is inconsistent with the public policy which the General Assembly adopted in Ch. 73 of the Acts of 1972, providing for compulsory automobile insurance for all Maryland automobiles with specified required coverages." 302 Md. at 357, 488 A.2d 166. Of significance to the Court in determining that Ch. 73 of the Acts of 1972 enunciated Maryland public policy was the comprehensiveness of that enactment. *See* 302 Md. at 357–360, 488 A.2d 166.

In *State Farm Mutual v. Nationwide Mutual*, 307 Md. 631, 635–637, 516 A.2d 586 (1986) the Court refined its holding in *Jennings* by holding that, as to an insured, "the public policy embodied in the compulsory insurance law extends only to liability coverage up to and including the statutory minimum coverage." 307 Md. at 644, 516 A.2d 586. That holding did no more than recognize the principle that "a contractual provision that violates public policy is invalid, but only to the extent of the conflict between the stated public policy and the contractual provision." 307 Md. at 643, 516 A.2d 586.[2]

The question with which we must grapple is not whether Maryland has a public policy relevant to the issue at hand, but just how strong that policy is. Appellant contends that it is sufficiently strong to override the rule of *lex loci contractus*, while appellee, predictably, suggests that it is not.

Critical to appellee's position is the absence of a statute explicitly stating that the household exclusion is against public policy. It is also persuaded by the fact that the

---

**2.** At oral argument the parties acknowledged that the only issue presented for resolution is the effect of the household exclusion clause on the minimum insurance coverages mandated by Maryland law. They agree that the exclusion applies to an amount above that minimum coverage. They thus anticipated our recent holding in *Walther v. Allstate Insurance Company*, 83 Md.App. 405, 575 A.2d 339 (1990).

Maryland financial responsibility statute, upon which appellant relies, addresses only insurance policies "issued, sold, or delivered" in Maryland. *See* Maryland Code Ann. Art. 48A § 541(a).

In *Bethlehem Steel v. G.C. Zarnas & Company,* 304 Md. 183, 498 A.2d 605 (1985), the Court of Appeals held contrary to Maryland public policy and, thus, unenforceable in Maryland courts a provision in a construction contract, executed in Pennsylvania, pursuant to which an indemnitor agreed to indemnify an indemnitee against liability for damages resulting from the sole negligence of the indemnitee. 304 Md. at 184, 498 A.2d 605. Maryland's public policy was set forth in a statute, Maryland Courts & Jud.Proc.Code Ann. § 5–305, which provides:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relating to the construction, alteration, repair, or maintenance of a building, structure, appurtenance or appliance, including moving, demolition and excavating connected with it, purporting to indemnify the promisee against liability for damages arising out of bodily injury to any person or damage to property caused by or resulting from the sole negligence of the promisee or indemnit[ee], his agents or employees, is against public policy and is void and unenforceable.

Although factually inapposite, the rationale underlying the Court's resolution of the conflict of laws problem is instructive. Addressing which conflict of laws rule should apply, the court stated:

> We fully agree that merely because Maryland law is dissimilar to the law of another jurisdiction does not render the latter contrary to Maryland public policy and thus unenforceable in our courts. Rather, for another state's law to be unenforceable, there must be "a strong public policy against its enforcement in Maryland" ... *or* "a public policy sufficient to require the application of law other than the law of the place of the [contract].... (emphasis provided)

304 Md. at 189, 498 A.2d 605. The question whether Maryland's public policy is sufficiently strong to preclude application of another state's law involves more than a determination that the law of the two states is different. It is sufficiently strong where the General Assembly of Maryland has specifically addressed the issue and "has unequivocally told the Maryland judiciary that [it] 'is void and unenforceable.'" 304 Md. at 190, 498 A.2d 605. In such case, the rule of *lex loci contractus* will not apply if the law of the other state is contrary to Maryland law.

In this case, the General Assembly did not specify that a household exclusion clause is void and unenforceable in Maryland; rather, it specified that a certain amount of insurance coverage, which necessarily may be affected by a household exclusion clause, is mandated. And while the legislature never used the term "public policy" in the financial responsibility statute, the Maryland Court of Appeals has characterized the statutory mandating of minimum insurance coverage as being expressive of the public policy of Maryland in favor of required insurance coverage. Although in a different form, therefore, the public policy thus expressed is, nevertheless, important as well as strong.

Appellee contends that that public policy does not apply in this case because it is directed at vehicles registered in Maryland rather than those registered outside of Maryland. We are not persuaded. Maryland's public policy is not aimed at enforcing registration requirements; its focus is upon "assuring recovery for innocent victims of motor vehicle accidents." *State Farm Mutual v. Nationwide Mutual,* 307 Md. at 639, 516 A.2d 586, quoting *State Farm Mutual Automobile Insurance Company v. Maryland Automobile Insurance Fund,* 277 Md. 602, 605, 356 A.2d 560 (1976).

We reject appellee's argument for yet another reason. In *Zarnas,* the statute upon which the Court relied specifically addressed Maryland contracts, not contracts from other states. Nevertheless, it was the enforceability of the

clause, rather than the place where the contract containing the clause was executed, that controlled.[3]

We hold that Maryland public policy is sufficiently strong as to require application of Maryland law, in this case, rather than the rule of *lex loci contractus.*[4]

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY WITH INSTRUCTIONS TO ENTER JUDGMENT CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.

---

**3.** Appellant suggests that *Boblitz v. Boblitz,* 296 Md. 242 (1983), which abrogated the spousal immunity rule in Maryland, bolsters the strength of Maryland's public policy against household exclusions in insurance liability contracts. We rejected that argument in *Walther, supra.*

**4.** Appellant's other contentions are without merit. Her reliance on a theory of "significant contacts" to demonstrate that Maryland is the appropriate choice of law forum has been explicitly rejected, by the Court of Appeals. *See Hauch v. Connor,* 295 Md. 120, 123, 453 A.2d 1207 (1983). Similarly, appellant's reliance on Florida law and, in particular, § 627.426(2), Florida Statutes (1985), as prohibiting appellee's denial of coverage in this case is misplaced. That argument was specifically rejected by the Florida Supreme Court. In *AIU Insurance Company v. Block Marina Investment, Inc.,* 544 So.2d 998, 1000 (1989), the Court opined:

Further, construing the term "coverage defense" to include a disclaimer of liability based on an express coverage exclusion has the effect of rewriting an insurance policy when section 627.426(2) is not complied with, thus placing upon the insurer a financial burden which it specifically declined to accept. Such a construction presents grave constitutional questions, the impairment of contracts and the taking of property without due process of law. Therefore, we hold that the term "coverage defense," as used in section 627.-426(2), means a defense to coverage that otherwise exists. We do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained. (footnote omitted)