614 A.2d 85

Jeanne O. WARD et al.

v.

**NATIONWIDE MUTUAL AUTOMOBILE INSURANCE COMPANY.**

No. 125, Sept. Term, 1990.

Court of Appeals of Maryland.

Oct. 26, 1992.

Edward C. Bou, Washington, D.C., argued and on brief (Stephen A. Bou, Edward C. Bou, P.C., on brief), for plaintiffs.

John A. Buchanan, Upper Marlboro, argued and on brief (Giancarlo M. Ghiardi, Sasscer, Clagett, Channing & Bucher, on brief), for defendant.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and Charles E. ORTH, Jr., Judge of the Court of Appeals (Retired, Specially Assigned).

ELDRIDGE, Judge.

This case involves claims under an automobile insurance policy for personal injury protection (PIP) benefits. Both Maryland and the District of Columbia have statutory provisions relating to claims for PIP benefits under automobile insurance policies, and the issues before us concern which statutes are applicable, as well as the meaning of the applicable statutory provisions.

The action arose out of an automobile accident which occurred on March 19, 1988, in Adelphi, Maryland. The six plaintiffs, who are Jeanne O. Ward, Jessica M. Ward, Danielle Ward, Dawn Ward, Wanda Miles, and Olivia C. Miles, were traveling in an automobile on University Boulevard in Adelphi when their vehicle was struck in the rear by an automobile driven by the defendant Muthuvel Chelliah. The four Ward plaintiffs and the defendant Chelliah are residents of Maryland. The two Miles plaintiffs are residents of the District of Columbia.

The automobile in which the plaintiffs were traveling was owned by Lillie and Russell Miles, who are the parents of the plaintiff Wanda Miles and the grandparents of the plaintiff Olivia C. Miles. Lillie and Russell Miles are also residents of the District of Columbia, residing in the same household as Wanda and Olivia Miles. The Miles automobile was registered in the District of Columbia. It was covered by an automobile insurance policy which was executed and delivered in the District of Columbia by the defendant Nationwide Mutual Automobile Insurance Company. Lillie and Russell Miles were the named insureds in the policy.

The six plaintiffs on April 27, 1988, each submitted a complete application for PIP benefits on Nationwide's forms. In a letter accompanying these applications, the plaintiffs asserted their rights to "PIP benefits available under the policy of insurance and paid for by the insured," and also informed Nationwide that they intended to assert

third party liability claims against Muthuvel Chelliah.[1] Nationwide denied the applications for PIP benefits on the theory that, under District of Columbia law, the plaintiffs must elect either to receive PIP benefits or to maintain a third party liability claim, but that the plaintiffs could not elect both.

The plaintiffs later commenced the present action by filing a complaint in the Circuit Court for Prince George's County, naming both Muthuvel Chelliah and Nationwide as defendants. In the first six counts of the complaint, the plaintiffs sought damages from Chelliah, alleging that his negligent driving caused the accident which resulted in injuries to each of the six plaintiffs. In counts seven through twelve, the plaintiffs sought damages from Nationwide based on Nationwide's refusal to pay PIP benefits in accordance with the insurance policy issued on the Miles automobile.

Nationwide moved for summary judgment. In its motion, Nationwide argued that the insurance contract was issued in the District of Columbia on an automobile which was registered in the District of Columbia, and that, therefore, District of Columbia law should apply under the principle of *lex loci contractus*. Furthermore, Nationwide argued that the applicable District of Columbia law requires an injured person to make an election between PIP coverage and a third party liability claim. According to Nationwide, the plaintiffs were not eligible for PIP benefits because, at the time of their application for the benefits, the plaintiffs

---

1. The dissent states that, despite the execution and filing of the applications for PIP benefits, the plaintiffs did not "elect" PIP benefits. The plaintiffs' submission of their applications for PIP benefits clearly indicates their election to receive PIP benefits. The District of Columbia Code Ann. (1981, 1988 Repl.Vol.), § 35–2105(a), requires a victim to "notify" the insurer "within 60 days of an accident of the victim's election to receive personal injury protection benefits." The plaintiffs notified Nationwide of their intent to receive PIP benefits by submitting applications for them on the forms prescribed by Nationwide for this purpose.

advised Nationwide of their intent to pursue a third party liability claim.

In response to Nationwide's motion for summary judgment, the plaintiffs argued that, because the accident occurred in Maryland, the law of Maryland should control under the principle of *lex loci delicti*.[2] The plaintiffs alternatively argued that, as long as they applied for PIP benefits within the sixty day time period provided by District of Columbia law, "an insured is entitled to personal injury protection coverage, regardless of any liability claim that may arise out of the accident."

At the conclusion of a hearing, the circuit court granted Nationwide's motion for summary judgment with respect to counts seven through twelve. Thereafter the case proceeded to trial on counts one through six. Subsequently, money judgments were entered in favor of the plaintiffs and against the defendant Chelliah.

The plaintiffs noted an appeal, challenging only the summary judgment in favor of Nationwide. Before argument in the Court of Special Appeals, this Court issued a writ of certiorari.

As previously stated, the insurance policy at issue in this case was executed in the District of Columbia on a vehicle registered in the District of Columbia. The insurance policy provided for "Personal Injury Protection options in accordance with the District of Columbia Compulsory No–Fault Motor Vehicle Insurance Act...." The basic provision of that statute relating to PIP benefits is District of Columbia

---

2. Judge Chasanow's dissent states that the plaintiffs argued that they need not make an election between PIP benefits and a tort suit because they believed that Maryland "contract and insurance law was applicable." This is not our understanding of the plaintiffs' position. The plaintiffs argued that Maryland *tort* law was applicable and not District of Columbia tort law embodied in D.C.Code § 35–2105. The accident occurred in Maryland. Under the principle of *lex loci delicti*, to which this Court has firmly adhered with regard to torts occurring in Maryland, the substantive tort law of Maryland applies and not the tort law of the District of Columbia.

Code Ann. (1981, 1988 Repl. Vol.), § 35–2104, which provides in relevant part as follows:

**"Personal injury protection.**

"(a) *In general.*—(1) In addition to insurance required to be provided by an insurer under § 35–2106, each insurer shall offer to each person required to have insurance under this chapter optional personal injury protection insurance as set forth in this section. Personal injury protection shall provide coverage for victims for injuries arising from accidents resulting from the operation or use of a motor vehicle by the insured or use of the insured motor vehicle within or outside the District. It shall provide benefits for medical and rehabilitation expenses, work loss, and funeral benefits as set forth in this section. Personal injury protection benefits are applicable only to a victim who is an insured or an occupant of the insured's vehicle or of a vehicle which the insured is driving.

\* \* \* \* \* \*

"(b) *Payment without regard to fault.*—The benefits set forth in this section with respect to personal injury protection shall be provided without regard to, and irrespective of, negligence, freedom from negligence, fault, or freedom from fault on the part of any person."

Lillie and Russell Miles, in their insurance policy with Nationwide, chose to purchase the optional PIP coverage provided for by § 35–2104. With respect to the automobile involved in the accident, they carried PIP coverage in the amount of $100,000.00 for medical expenses, $24,000 for work losses and $4,000 for funeral expenses. A premium was charged for each. The PIP endorsement to the insurance policy expressly covered persons other than the named insureds while those persons were occupying the insured vehicle. Furthermore, § 35–2104 of the D.C.Code, quoted above, provides that the PIP coverage is applicable to occupants of the insured vehicle.

 Actions by insureds or persons covered under insurance policies, against their insurers, for benefits under so-called first party coverages such as PIP or uninsured motorist, are contract actions and are generally controlled by principles applicable to contract actions. Thus in *Reese v. State Farm Mut. Auto. Ins.*, 285 Md. 548, 552–553, 403 A.2d 1229, 1231–1232 (1979), we stated:

> "Under the statutorily required coverage, the defendant has directly promised to pay the insured plaintiff under certain conditions. Because it is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party, the uninsured motorist coverage is in insurance parlance 'first party coverage' like collision, comprehensive, medical payments or personal injury protection, and not 'third party coverage' such as personal injury or property damage liability insurance. A suit based upon the insured's allegations that he is entitled to payment under one of the first party coverage clauses in the contract he entered into with his insurance carrier, and that the carrier has refused payment thereby breaching its promise, is clearly a contract action.... [It is] governed by the principles and procedures applicable to contract actions generally."

*See Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 169–170, 582 A.2d 501, 503 (1990); *Nationwide Mutual Ins. v. Webb*, 291 Md. 721, 735–736, 436 A.2d 465, 473–474 (1981). *See also Insurance Com'r v. Prop. & Cas. Corp.*, 313 Md. 518, 529–532, 546 A.2d 458, 463–465 (1988). Therefore, the claims against Nationwide for PIP benefits, set forth in counts seven through twelve of the plaintiffs' complaint, are contract claims. They are governed by the principles applicable to contract claims, including contract choice of law principles. *Cf. Volkswagen of America v. Young*, 272 Md. 201, 220, 321 A.2d 737, 747 (1974) (a personal injury action based on breach of warranty is a contract action and thus is governed by contract choice of law principles).

 As recently discussed in *Allstate Insurance Company v. Hart*, 327 Md. 526, 611 A.2d 100 (1992), in deciding

questions of interpretation and enforceability of contract provisions, a Maryland court ordinarily should apply the law of the jurisdiction where the contract was made. This choice of law principle is referred to as *lex loci contractus.* *See, e.g., Kramer v. Bally's Park Place,* 311 Md. 387, 390, 535 A.2d 466, 467 (1988); *Bethlehem Steel v. G. C. Zarnas & Co.,* 304 Md. 183, 188, 498 A.2d 605, 607 (1985); *Traylor v. Grafton,* 273 Md. 649, 660, 332 A.2d 651, 659 (1975).

■ The rule of *lex loci contractus* is subject to a limited exception where a contractual provision or the foreign law is contrary to a very strong Maryland public policy. Nevertheless, for the reasons set forth in *Allstate Insurance Company v. Hart, supra,* 327 Md. at 532–33, 611 A.2d at 103, this narrow public policy exception has no application to the PIP coverage under the insurance policy in the present case and to the District of Columbia statute regulating contractual PIP benefits.

Consequently, because the Nationwide insurance policy was executed and delivered in the District of Columbia, on an automobile owned by District residents and registered in the District, the law of the District of Columbia governing PIP coverage and PIP benefits is the controlling law in this case. The Maryland statutory provisions regulating PIP coverage and benefits,[3] which apply to automobile insurance policies issued, sold, or delivered in Maryland, or to motor vehicles required to be registered in Maryland, have no application in this case.

■ Although Nationwide correctly argues that the plaintiffs' PIP claims are controlled by the language of the PIP endorsement to the insurance policy and by the District of Columbia law regulating PIP coverage, Nationwide's assertions concerning the applicable District of Columbia law are

---

3. Maryland Code (1957, 1991 Repl.Vol., 1992 Cum.Supp.), Art. 48A, §§ 539, 540, 543, 544, and 545.

totally unsupported.[4] Nationwide in this case has consistently taken the position that, if the plaintiffs intended to or chose to pursue third party liability tort claims, they are not entitled to PIP benefits. This position finds no support in either the language of the insurance policy or the provisions of the District of Columbia Code regulating PIP benefits.

The provisions of the Nationwide insurance policy relating to PIP coverage are contained in an endorsement entitled "Endorsement 1895A. Personal Injury Protection Coverage (District of Columbia)." The language of the endorsement does not, either expressly or by any possible inference, provide that if a covered person pursues a third party liability claim, that person is not entitled to PIP benefits. The endorsement contains a list of fourteen "Coverage Exclusions," but none of them relates to the election or pursuit of a third party liability claim. The endorsement also contains a section entitled "Coordination and Non–Duplication," which deals with the relationships between the PIP coverage and workers' compensation or temporary nonoccupational disability benefits required by law, and between the PIP coverage and PIP benefits under another policy. The section does not mention liability claims or liability insurance.

Finally, the language of the insurance policy on the Miles automobile directly contradicts Nationwide's theory. In a section entitled "Our Right To Recover Payment," the policy states as follows:

> "1. If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:
> (a) whatever is necessary to enable us to exercise our rights, and

---

**4.** Instead of this Court construing the applicable District of Columbia law, we would prefer to certify the question to the District of Columbia Court of Appeals. The District of Columbia, however, does not have a certification statute authorizing that Court to accept such a certified question.

(b) nothing after loss to prejudice them.

2. If we make a payment under this coverage and the person to or for whom payment is made recovers damages from another, that person shall:

(a) hold in trust for us the proceeds of the recovery; and

(b) reimburse us to the extent of our payment."

These subrogation and reimbursement provisions clearly contemplate the payment by Nationwide of PIP benefits which are later reimbursed after a successful tort action against a negligent third party. Nationwide's contention, that covered persons cannot receive PIP benefits under the policy if they intend to pursue a third party liability claim, is flatly inconsistent with this portion of Nationwide's policy.

The sections of the District of Columbia Code regulating contractual PIP coverage similarly provide no support for Nationwide's position. As earlier set forth, the principal statutory provision requiring an insurer to offer PIP coverage, and delineating the scope of that coverage, is § 35–2104 of the District of Columbia Code. Sections 35–2105(a), (d), (e), (f), (g) and (h), 35–2106(a) and (g), 35–2107, 35–2110, and 35–2111 also relate to PIP coverage and benefits. Under these provisions, the basic conditions for receipt of PIP benefits are that an insured purchase the optional PIP coverage with respect to his motor vehicle, that a covered person suffer a personal injury resulting from the operation or use of the insured motor vehicle within or outside the District, that such person incur medical expenses or work loss or other covered expenses set forth in the statute, that the victim "notify the personal injury protection insurer within 60 days of an accident of the victim's election to receive personal injury protection benefits" (§ 35–2105(a)), and that the victim not have received PIP benefits fully covering the loss under the PIP coverage of another policy. If these conditions are met, the language of § 35–2104(c), (d) and (e) mandates that PIP "benefits shall be paid" for the victim's reasonable medical and rehabilitation expenses, for the victim's work loss, and, in the event of death, for

funeral expenses. Although §§ 35–2105(a) and 35–2105(g) provide that if a covered person fails to file a PIP claim within 60 days of the accident, the person ordinarily is limited to pursuing a third-party liability action, nothing in these or any other sections of the District of Columbia Code indicates that an insurer may deny a timely filed PIP claim because the claimant is pursuing a third party tort action. The plaintiffs in this case did notify Nationwide of their election to receive PIP benefits within 60 days of the accident.

In arguing that the plaintiffs are not entitled to PIP benefits because they chose "to pursue both a claim for PIP benefits and [to seek] damages against the third party driver," Nationwide relies upon § 35–2105(b) of the District of Columbia Code. (Nationwide's brief, p. 7). This provision, entitled "Lawsuit restriction . . .," in its entirety states as follows:

"(b) A victim who elects to receive personal injury protection benefits may maintain a civil action based on liability of another person only if:

(1) The injury directly results in substantial permanent scarring or disfigurement, substantial and medically demonstrable permanent impairment which has significantly affected the ability of the victim to perform his or her professional activities or usual and customary daily activities, or a medically demonstrable impairment that prevents the victim from performing all or substantially all of the material acts and duties that constitute his or her usual and customary daily activities for more than 180 continuous days; or

(2) The medical and rehabilitation expenses of a victim or work loss of a victim exceeds the amount of personal injury protection benefits available."

Section 35–2015(b) restricts tort lawsuits by a victim who elects to receive PIP benefits. The above-quoted language does not state that a covered person who has timely elected PIP benefits is not entitled to PIP benefits if that person also pursues a tort liability claim against the wrongdoer.

Furthermore, no other provision of the District of Columbia Code which has been called to our attention, or of which we are aware, contains the converse of § 35–2105(b), namely that a victim who elects to pursue a third party tort liability claim is not entitled to receive benefits under a timely PIP application. In addition, no decision of the District of Columbia Court of Appeals supporting this view of the statute has been called to our attention.[5]

Moreover, Nationwide's construction of § 35–2105(b) would seem to be inconsistent with the purpose of the District of Columbia's no-fault motor vehicle insurance law. In light of the findings set forth in § 35–2101(a), it appears that the District of Columbia Council believed that the traditional tort liability remedy was inadequate and failed to protect victims of motor vehicle accidents.[6] The Council

---

**5.** Judge Chasanow in dissent cites two cases and a commentator to support his view that a victim who elects to pursue a tort suit is not entitled to receive benefits under a timely PIP application. Neither the cases cited nor the commentator support this position.

In *Dimond v. District of Columbia*, 792 F.2d 179, 184 (D.C.Cir.1986), the United States Court of Appeals for the District of Columbia Circuit stated that "[o]nly victims who have elected to receive optional no-fault personal injury protection benefits will ever be statutorily barred from maintaining a tort action." Similarly in *Lee v. District of Columbia*, 559 A.2d 308, 309 n. 1 (D.C.App.1989), the District of Columbia Court of Appeals stated that "an accident victim may elect to sue in tort rather than receive personal injury protection benefits." Each court and the commentator simply paraphrased the District of Columbia's statute barring certain tort lawsuits after an accident victim elected PIP benefits. Neither court remotely suggested that there is a bar against receiving PIP benefits because the victim instituted a tort suit. The tort suit may be forfeited when the victim applies for PIP benefits; PIP benefits are not forfeited when the victim files a lawsuit. For example, if a victim, injured in an accident occurring in the District of Columbia in a vehicle registered and insured in the District, files a third party liability suit the day after an accident and thereafter, within 60 days files a claim for PIP benefits, the District of Columbia's substantive law of torts requires that the lawsuit be dismissed, *not* that PIP benefits be denied. None of the authorities relied upon in the dissent support a contrary conclusion.

**6.** Section 35–2101(a) of the District of Columbia Code states as follows:

"(a) *Findings.*—The Council of the District of Columbia finds that:

provided for PIP coverage in lieu of tort lawsuits. As shown by the findings, the substantive provisions of the statute, and the cases, the legislative body intended to encourage contractual no-fault PIP claims and to restrict tort lawsuits.[7] This is typical of numerous no-fault insurance plans throughout the country. Nationwide, however, would construe the statute to have the opposite result.

> (1) Motorists, motor vehicle passengers, and pedestrians in the District are not adequately protected, by current law and practice, from the consequences of motor vehicle accidents.
> (2) If a person suffers personal injuries because of an accident involving a motor vehicle in the District, he or she is unlikely to recover the amount of his or her actual losses because:
> (A) Approximately 50% of the victims do not satisfy the prerequisites to compensation under the present law;
> (B) Approximately 40% of the operators in the District do not maintain any motor vehicle insurance or have other financial resources sufficient to pay losses;
> (C) The average motor vehicle insurance policy in the District will pay only up to $10,000 for the personal injuries of any 1 victim, a sum that is insufficient to compensate adequately a victim with serious injuries; and
> (D) Satisfaction of the prerequisites to compensation under the present law is time-consuming and expensive to policyholders because a victim must establish that the accident was the fault of another person; that the person injured was free from contributory fault; and that the injuries suffered were the natural and probable consequences of the accident.
> (3) Far greater protection to victims of motor vehicle accidents is available at a lower price than that afforded for coverage currently available.
> (4) The purchase of this better insurance protection should be compulsory because of the great potential of a motor vehicle to cause personal injury."

7. *See, e.g., Stackhouse v. Schneider,* 559 A.2d 306, 307–308 (D.C.App. 1989) (§ 35–2105 represents "an effort to preclude suit in motor vehicle cases where an injury was not serious"); *Coleman v. Cumis Ins. Soc., Inc.,* 558 A.2d 1169, 1171 (D.C.App.1989) ("In exchange for this certain, but limited, [PIP] compensation, the No–Fault Act eliminated most civil claims for damages based upon tort liability"); *Monroe v. Foreman,* 540 A.2d 736, 741 (D.C.App.1988) ("the Council enacted the No–Fault Act mandating compulsory insurance and restricting civil suits in order that motorists and victims, such as the parties herein, would be adequately protected by making recovery of out-of-pocket expenses readily available through an insurer"); *Johnson v. Collins,* 516 A.2d 196, 198 (D.C.App.1986).

The "beneficiaries" of the District's no-fault insurance plan are the victim and the negligent tortfeasor, who, if the victim elects to receive PIP benefits, is protected from a third party liability suit unless certain conditions are met. *See Monroe v. Foreman*, 540 A.2d 736, 741 (D.C.App.1988). The beneficiary is not the claimants' PIP insurer who has collected premiums for PIP benefits and who is contractually obligated to pay a timely application for those benefits. Nationwide's position turns no-fault insurance on its head.

Consequently, we reject Nationwide's contention that § 35–2105(b) of the District of Columbia Code mandates a loss of a covered person's PIP benefits if that person also attempts to pursue a liability claim against the third party tortfeasor. *Cf. Chairman of the Board v. Waldron*, 285 Md. 175, 401 A.2d 172 (1979) (rejecting an argument similar to that made here by Nationwide with regard to a Maryland statute providing retirement benefits). Section 35–2105(b) is simply a statute limiting tort actions. If the accident in this case had occurred in the District of Columbia, and if the defendant Chelliah had invoked § 35–2105(b), the statute may have provided a tort defense for Chelliah.[8] It does not

---

8. As previously noted, *supra* n. 2, when determining which jurisdiction's tort law shall govern, a Maryland court ordinarily will apply the substantive tort law of the place where the tort occurred under the doctrine of *lex loci delicti. Hauch v. Connor*, 295 Md. 120, 123–125, 453 A.2d 1207, 1209–1212 (1983), and cases there cited. *See Black v. Leatherwood*, 92 Md.App. 27, 37–44, 606 A.2d 295, 299–303, *cert. denied*, 327 Md. 626, 612 A.2d 257 (1992) (Legislative cap on the amount of tort damages recoverable for noneconomic loss is part of the substantive law of tort damages and thus is subject to the principle of *lex loci delicti;* therefore, because the accident occurred in New Jersey, the Maryland statutory cap on recoverable tort damages is not applicable).

In *Jacobs v. Adams*, 66 Md.App. 779, 505 A.2d 930, *cert. denied*, 306 Md. 513, 510 A.2d 259 (1986), the Court of Special Appeals held that § 35–2105(b) should be regarded as part of the District of Columbia's substantive tort law. As the accident in the present case occurred in Maryland, however, it would not appear that § 35–2105(b) of the District of Columbia Code would have benefited the defendant Chelliah even if he had invoked that statute. Under Maryland law, the receipt of PIP benefits does not affect the right to maintain a lawsuit

prevent the plaintiffs' from collecting the contractually bargained for PIP benefits.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH REGARD TO COUNTS SEVEN THROUGH TWELVE OF THE COMPLAINT REVERSED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY NATIONWIDE MUTUAL AUTOMOBILE INSURANCE COMPANY.

CHASANOW, Judge, dissenting.

I concur with the majority that "the law of the District of Columbia governing PIP coverage and PIP benefits is the controlling law in this case." Majority Op. at 247. I dissent from the majority's construction of the District of Columbia Code and specifically from the holding that "nothing in [§ 35–2105] or any other sections of the District of Columbia Code indicates that an insurer may deny a timely filed PIP claim because the claimant is pursuing a third party tort action." Majority Op. at 250.

---

against the tortfeasor. *See* Code (1957, 1991 Repl.Vol.), Art. 48A, § 542.

The dissent argues that D.C.Code § 35–2105 requires the plaintiffs to choose either PIP benefits or a tort suit, or forego the PIP benefits. Under the dissent's view, a Maryland court would be required, because of foreign tort law, to bar a suit for PIP benefits which would be permitted under Maryland law. This view raises the question of whether Maryland, the state where the accident occurred and the forum state, would apply its own law instead of the foreign law. In *Hauch v. Connor, supra,* 295 Md. at 133, 453 A.2d at 1214, we stated:

"With regard to the threshold matter of whether the court is open to a particular litigant, obviously the policy of the forum state is extremely important. In this respect, the bar or absence thereof in a state's workmen's compensation statute is somewhat analogous to the bar of a state's statute of limitations. The latter matter, of course, is controlled by the law of the forum."

*See also, Bishop v. Twiford,* 317 Md. 170, 175–176, 562 A.2d 1238, 1241–1242 (1989). The dissent's view of § 35–2105 of the D.C.Code would present significant choice of law issues in a case such as this.

PIP under District of Columbia law is a separately purchased optional form of insurance. The PIP statute replaced part of the District of Columbia no-fault law. The District of Columbia PIP optional insurance provides for generous payments—all medical expenses and all loss of wages. The relevant PIP election section provides as follows:

§ 35–2105. **Lawsuit restriction and opportunity for arbitration under optional insurance.**

(a) A victim shall notify the personal injury protection insurer within 60 days of an accident of the victim's *election* to receive personal injury protection benefits.

(b) A victim who elects to receive personal injury protection benefits *may maintain a civil action* based on liability of another person *only if*:

(1) The injury directly results in substantial permanent scarring or disfigurement, substantial and medically demonstrable permanent impairment which has significantly affected the ability of the victim to perform his or her professional activities or usual and customary daily activities, or a medically demonstrable impairment that prevents the victim from performing all or substantially all of the material acts and duties that constitute his or her usual and customary daily activities for more than 180 continuous days; or

(2) The medical and rehabilitation expenses of a victim or work loss of a victim exceeds the amount of personal injury protection benefits available.

(c) Nothing in subsection (b) of this section shall prevent the survivors of a victim whose death arises out of the maintenance or use of a motor vehicle from maintaining a civil action based on the liability of another person for the loss and noneconomic loss resulting from the victim's death regardless of whether the victim had previous to his or her death elected to receive personal injury protection benefits.

(d) The insurer must notify any identifiable victim in writing of the 60–day election period.

(e) The 60–day election period may be extended upon the mutual written agreement of the victim and the insurer.

(f) If a victim is incapacitated or in some other way unable to make the election, it may be made by the next closest relative, or if there is no relative, an individual taking responsibility for the victim's affairs. (Emphasis added).

I read this statute as prohibiting double recovery. It provides that an accident victim eligible for PIP benefits has an option to either elect the certainty of PIP benefits or elect the uncertainty of a civil suit against the tortfeasor. These are separate mutually exclusive options. One exception to this general rule is found in subsection (b)(1) of § 35–2105, which allows very seriously injured victims (these plaintiffs admittedly do not meet this statutory criteria) to collect PIP and then still file suit, but in that instance, the statute gives the insurance company the right to recover the PIP payment made to the victim if the victim is successful in the tort suit. § 35–2111(d). That is the reason why the insurance policy in the instant case contains the "subrogation and reimbursement provision" discussed in the majority opinion. Majority Op. at 248–249. That policy provision is by its own terms only applicable where the injured person receiving PIP "has a right to recover damages from another." The statutory exception allowing seriously injured victims to both claim PIP benefits and file a tort suit is not applicable to the plaintiffs in the instant case, but that statutory provision is the reason why the majority may be incorrect in stating that the insurance contract's subrogation provision is "flatly inconsistent" with Nationwide's contentions in the instant case. Majority Op. at 249.

The majority opinion apparently makes the incorrect assumption that the District of Columbia Council intended the word "elect" to be synonymous with the word "claim." The statute does not give an accident victim the right to claim (demand as a right) PIP. The statute gives an accident

victim the right to elect (choose or select) PIP as an alternative to a tort claim suit. "Elect" has a very specific meaning. *See Firemen's Benevolent Ass'n v. City Council of City of Santa Ana*, 168 Cal.App.2d 765, 336 P.2d 273, 276 (1959) ("The terms 'elect' and 'election' [when used in a statute] mean to make a choice between two alternatives."); *Exchange Bank & Trust Co. v. Pure Ice & Cold Storage Co.*, 415 S.W.2d 897, 900 (Tex.1967) ("In general, an election [when used in a statute] means the obligation to choose between two inconsistent or alternative rights."). In *Bierce v. Hutchins*, 205 U.S. 340, 27 S.Ct. 524, 51 L.Ed. 828 (1907), Justice Holmes defined "election" as follows:

"Election is simply what its name imports; a choice, shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone."

*Id.* at 346, 27 S.Ct. at 525, 51 L.Ed. at 833.

The statute does not require a claim within 60 days—it requires an *election* within 60 days. The plaintiffs themselves recognized this. They recognized also that if they filed an "election" of PIP benefits under District of Columbia law they would lose their right to file the tort suit. Plaintiffs tried to avoid any election, which the majority allows them to do, and thereby receive cumulative, instead of alternative, relief. In the 60–day letter to the insurance company, the plaintiffs' attorney claimed PIP benefits as well as the right to sue in tort, stating:

"Please be advised that this is a Maryland automobile accident and Maryland law applies in this case and therefore my clients are not required to make any D.C. election. Rather, they are filing for PIP benefits available under this policy of insurance and paid for by the insured. They are asserting a Maryland liability claim against the responsible driver."

Counsel was incorrect in his choice of law assumption, and by refusing to make the required 60–day *"election"* under District of Columbia law, I believe the plaintiffs lose their right to PIP benefits. It seems clear that plaintiffs' letter

to Nationwide was not an election to accept PIP in lieu of a tort claim. Indeed, if plaintiffs made any election, it would seem that their primary "election" was to file a tort suit against Chelliah. They indicated that was their intent and that they were not making an "election" of PIP benefits in lieu of the tort suit. Chelliah apparently accepted the fact that plaintiffs elected a tort liability suit rather than PIP benefits because he never claimed that there was any PIP election, which may have barred plaintiffs' tort suit against him. Even if we do not conclude that plaintiffs' letter was an election to sue in tort in lieu of PIP benefits, we clearly cannot construe the letter as an election to take PIP benefits in lieu of a tort suit. The "election" required in order to obtain PIP benefits was simply never made.

Plaintiffs' failure to elect is further evidenced by their declaration. The first six counts were their tort claims against Chelliah and the second six counts were their PIP claims against Nationwide. That suit reinforces the fact that there was no "election" of PIP benefits. Plaintiffs never denied that they failed to make an "election" of PIP benefits. In fact, they refused to make an election because of their erroneous belief that Maryland, not District of Columbia, contract and insurance law was applicable.

Plaintiffs seem to acknowledge that applicable District of Columbia law and the insurance endorsement do require an election, which they have refused to make, but they argue Maryland should not enforce that requirement either because the tort occurred in Maryland or because enforcement of District of Columbia insurance contract law would violate Maryland's public policy. In their appellate brief, plaintiffs characterize the action of the trial court as follows:

"By granting summary judgment in favor of Appellee Nationwide, the trial court ruled that Appellants' claim for PIP/No Fault benefits is governed by the District of Columbia Code 35–2105 (1988 Repl. Vol.), *which requires* an injured party to *elect between* making a claim for PIP

benefits and pursuing a common-law tort action against a third party." (Emphasis added).

The brief goes on to state:

"By forcing an injured party to elect between such causes of action, the District of Columbia statute clearly affects the injured parties' substantive rights.

\* \* \* \* \* \*

District of Columbia Code Sec. 35–2104, on the other hand, is an 'optional' PIP statute, thus affording an insured the option of obtaining any one or combination of coverage set forth in the statute. D.C.Code Sec. 35–2104(a)(2) (1988 Repl. Vol.). Hence, District of Columbia benefits are alternative and not cumulative.

Therefore, the Court has an even more compelling reason for overriding the lower court's application of the *lex loci contractus* doctrine than had the court in *Hart.* [*Hart v. Allstate Insurance Co.,* 83 Md.App. 642, 577 A.2d 373 (1990) ]. Certainly the Maryland legislature has made it abundantly clear that a victim of a car accident in Maryland should not be forced to elect between personal injury protection benefits and a third-party tort claim, and, in so doing, the legislature has expressed the importance of Maryland's public policy in this instance. Hence, both the remedy for PIP benefits and also the right to assert a personal injury claim are cumulative in Maryland. Accordingly, to apply the applicable optional D.C. PIP/No Fault law to the instant case in light of the then existing mandatory Maryland PIP law would be contrary to public policy. Appellee's contract Endorsement should be void as a matter of Maryland public policy."

Indeed, even after the trial judge ruled that, because there was no effective election of PIP, plaintiffs were limited to their tort suit, the trial judge still gave plaintiffs the option of either electing PIP or continuing with the tort suit. The plaintiffs again failed to make that election. The colloquy went as follows:

"THE COURT: They [Nationwide] are not going to pay you any money. I just ruled they don't have to pay you any money. You have elected to sue in tort.

[Plaintiff's Attorney]: Nationwide doesn't have to pay period.

THE COURT: Period, that is right. Proceed with your action. Now, you could drop your case.

[Plaintiff's Attorney]: I could drop my P.I.P. case.

THE COURT: You could drop your case against Mr. Chelliah and get your P.I.P. benefits, that is your choice.

[Plaintiff's Attorney]: I know it is a Maryland accident and a District of Columbia policy, and there is nothing in that District of Columbia Code that says it has any impact beyond the confines of the District of Columbia."

Plaintiffs clearly made no election of PIP. They contend they have the right to both receive PIP benefits and also to maintain a tort lawsuit.[1] The majority agrees, based on what I perceive is a misreading of the District of Columbia statute.

I am not alone in my view that the District of Columbia statute § 35–2105 contains two mutually exclusive options. Either the eligible injured victim "elects" PIP within 60 days and forfeits the right to sue the tortfeasor *or*, if the victim does not "elect" the PIP option, the right to sue the tortfeasor is retained, but the right to PIP is lost (with one exception previously discussed that is not relevant in the instant case).

In *Dimond v. District of Columbia*, 792 F.2d 179 (D.C.Cir.1986), the court said:

"Prior to oral argument in this case, the District of Columbia City Council substantially amended the 1982 No–Fault Insurance Act. These amendments have made no-fault insurance coverage optional. The amendments

---

**1.** Following the court's ruling on the motion for summary judgment, plaintiffs were successful in their tort claims against Chelliah. The jury rendered judgments in favor of the individual plaintiffs in amounts ranging from $112.00 to $9,095.00.

also greatly alter the prior restrictions on tort suits for recovery of noneconomic losses arising out of automobile accidents. Only victims who have *elected* to receive the optional no-fault personal injury protection benefits will ever be statutorily barred from maintaining a tort action based on another person's responsibility for an auto accident." (Emphasis in original).

*Id.* at 184.

John R. Fonseca, in the 1991 Supplement to his *Automobile Insurance and No–Fault Law*, § 18:4.1, at 494, summarizes the District of Columbia PIP law as follows:

"An accident victim who is covered by PIP benefits has 60 days after the accident to decide whether he or she wants to received PIP benefits. Victims who elect to receive PIP benefits cannot maintain a civil action based on the liability of another person unless the injury results in:

—Substantial permanent scarring or disfigurement [etc.]"

Another indication that the majority is incorrect in stating that "nothing in these or any other sections of the District of Columbia Code indicates that an insurer may deny a timely filed PIP claim because the claimant is pursuing a third party tort action" is found in a footnote by the District of Columbia Court of Appeals. In *Lee v. District of Columbia*, 559 A.2d 308 (D.C.1989), the court said:

"In 1985, D.C. Law 6–104, § 2(d), modified this provision. Under present law, an accident victim may elect to sue in tort rather than receive personal injury protection benefits, regardless of the amount of medical expenses caused by the accident. 32 D.C. Reg. 7245, 7249 (1986)."

*Id.* at 309 n. 1.

Turning to the insurance contract's PIP endorsement in the instant case, none of the plaintiffs were parties to the insurance contract; nevertheless, they are entitled to elect PIP benefits under that insurance contract and in accor-

dance with the § 35–2105. The PIP endorsement in the instant case states:

"**PERSONAL INJURY PROTECTION COVERAGE**

This coverage provides Personal Injury Protection options in accordance with the District of Columbia Compulsory No–Fault Motor Vehicle Insurance Act of 1982, as amended in 1985 (the Act). The options and limits which you have selected are shown on your Declarations."

The PIP endorsement also clearly reflects the fact that PIP insurance premiums are computed based on the assumption that, except for severely injured accident victims where the PIP insurance carrier will be subrogated, the insurance industry will either have to bear the cost of PIP benefits *or* defend and/or pay tort liability claims, but not both. The PIP endorsement specifically states:

"Section 6 [35–2105] of the Act places limitations on a person's right to sue for damages. The premium for the policy reflects these limitations. If a court declares any of these limitations unenforceable we have the right to recompute the premium."

I would enthusiastically echo the majority's statement that "[a]s shown by the findings, the substantive provisions of the statute, and the cases, the legislative body intended to encourage contractual no-fault PIP claims and to restrict tort lawsuits." Majority Op. at 252. The legislative body accomplished its purpose by requiring a choice for non-seriously injured tort victims like the plaintiffs in the instant case. They must choose either the certainty of recovering their medical expenses and loss of wages through PIP benefits or choose the uncertainty of a tort lawsuit, but not both.

Permitting these plaintiffs to both "claim" PIP benefits and simultaneously pursue their tort lawsuit does not foster the purpose of the statute; it thwarts the purpose of the statute. Although our decision resolves this statutory interpretation issue for the litigants in the instant case, we will have to await the final decision on the construction of

this District of Columbia statute which will ultimately be made by the District of Columbia courts.

I respectfully dissent.